IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | |
| ) | |
| FORMOSA PLASTICS CORPORATION, ) | |
| TEXAS, ) | |
| ) | Judge |
| Defendant. ) | |

**CONSENT DECREE**

TABLE OF CONTENTS

I.      JURISDICTION AND VENUE ............................................................................... 2
II.     APPLICABILITY ................................................................................................... 2
III.    OBJECTIVES .......................................................................................................... 3
IV.     DEFINITIONS.......................................................................................................... 4
V.      CIVIL PENALTY .................................................................................................... 6
VI.     COMPLIANCE REQUIREMENTS ........................................................................ 7
VII.    THIRD PARTY AUDIT .......................................................................................... 10
VIII.   REPORTING REQUIREMENTS ........................................................................... 18
IX.     STIPULATED PENALTIES ................................................................................... 21
X.      FORCE MAJEURE ................................................................................................. 26
XI.     DISPUTE RESOLUTION ....................................................................................... 28
XII.    INFORMATION COLLECTION AND RETENTION............................................ 31
XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................................ 33
XIV.    COSTS ...................................................................................................................... 34
XV.     NOTICES ................................................................................................................. 35
XVI.    EFFECTIVE DATE ................................................................................................. 36
XVII.   RETENTION OF JURISDICTION ......................................................................... 36
XVIII.  MODIFICATION ..................................................................................................... 37
XIX.    TERMINATION ...................................................................................................... 37
XX.     PUBLIC PARTICIPATION .................................................................................... 38
XXI.    SIGNATORIES/SERVICE...................................................................................... 38
XXII.   INTEGRATION ....................................................................................................... 39
XXIII.  26 U.S.C. § 162(F)(2)(A)(II) IDENTIFICATION ................................................. 39
XXIV.   FINAL JUDGMENT ............................................................................................... 40

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendant, Formosa Plastics Corporation, Texas ("Formosa" or "Defendant"), violated Section 112(r) of the Clean Air Act ("Act"), 42 U.S.C. § 7412(r), and the 40 C.F.R. Part 68 Chemical Accident Prevention Provisions at its petrochemical manufacturing plant in Point Comfort, Texas ("Facility").

WHEREAS, the Complaint against Defendant alleges violations of Section 112(r)(1) of the Act, 42 U.S.C. § 7412(r)(1), related to two accidental releases of extremely hazardous substances resulting in injuries to workers at the Facility.

WHEREAS, the Complaint also alleges numerous violations of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), and the Chemical Accident Prevention Provisions of 40 C.F.R. Part 68 resulting in injuries to workers and property damage.

WHEREAS, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

1

## I.     JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to

28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and

over the Parties. Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C.

§ 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the

Complaint are alleged to have occurred in, and Defendant conducts business in, this judicial

district. For purposes of this Consent Decree, or any action to enforce this Consent Decree,

Defendant consents to the Court's jurisdiction over this Consent Decree and any such action and

over Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states

claims upon which relief may be granted pursuant to Sections 113(b) of the Act, 42 U.S.C.

§ 7413(b).

3.      Notice of the commencement of this action has been given to the State of Texas,

as required by Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## II.     APPLICABILITY

4.      The obligations of this Consent Decree apply to and are binding upon the United

States and upon Defendant and any successors, assigns, or other entities or persons otherwise

bound by law.

5.      No transfer of ownership or operation of the Facility, whether in compliance with

the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure

that the terms of the Consent Decree are implemented. At least 30 Days prior to such transfer,

Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall

simultaneously provide written notice of the prospective transfer, together with a copy of the

proposed written agreement, to the United States in accordance with Section XV (Notices). No

later than five Days after the completion of such transfer, Defendant shall provide an executed

copy of the written agreement to the same entities that received written notice of the prospective

transfer, in accordance with Section XV (Notices). Any attempt to transfer ownership or

operation of the Facility without complying with this Paragraph constitutes a violation of this

Consent Decree.

6.      Defendant shall provide a copy of this Consent Decree to all officers, employees,

and agents whose duties might reasonably include compliance with any provision of this Consent

Decree, as well as to any contractor retained to perform work required under this Consent

Decree. Defendant shall condition any such contract upon performance of the work in

conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, Defendant shall not raise as a

defense the failure by any of its officers, directors, employees, agents, or contractors to take any

actions necessary to comply with the provisions of this Consent Decree.

### III.     OBJECTIVES

8.      It is the express purpose of the Parties in entering into this Consent Decree to

further the objectives set forth in 42 U.S.C. § 7412(r)(1) by the expeditious implementation of

the requirements of this Consent Decree. All obligations of this Consent Decree have the

objective of causing the Defendant to come into and remain in full compliance with Section

112(r) of the Act, 42 U.S.C. § 7412(r), including implementing regulations found at 40 C.F.R.

Part 68.

## IV.     DEFINITIONS

9.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.   "Audit Contractor(s)" shall mean the independent third party approved by the United States to conduct the audit required by Paragraph 25.

b.   "Audit Briefing" means the out-briefing conducted by the Audit Contractor, as required by Paragraph 35.

c.   "Complaint" means the complaint filed by the United States in this action.

d.   "Consent Decree" means this Consent Decree.

e.   "Day" means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

f.   "Defendant" means Formosa Plastics Corporation, Texas.

g.   "DOJ" means the United States Department of Justice and any of its successor departments or agencies.

h.   "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies.

i.   "Effective Date" means the definition provided in Section XVI.

4

j.  "Facility" means Defendant's petrochemical manufacturing plant located at 201 Formosa Drive, Point Comfort, Texas.

k.  "Final Audit Report" means the report submitted to the Defendant and the United States pursuant to Paragraph 37.

l.  "Finding" shall mean, with respect to the Final Audit Report required pursuant to Section VII (Third Party Audit Requirements), an item that the Audit Contractor has judged to be in noncompliance with the applicable requirements of 40 C.F.R. Part 68 at the time of the audit.

m.  "Mechanical Integrity Inspections and Tests" means the inspections and tests performed on process equipment pursuant to 40 C.F.R. § 68.73.

n.  "Overdue Mechanical Integrity Inspections and Tests" means Mechanical Integrity Inspections and Tests that have not been performed at a frequency consistent with 40 C.F.R. § 68.73(d)(3).

o.  "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral.

p.  "Parties" means the United States and Defendant Formosa Plastics Corporation, Texas.

q.  "Reporting Period" means the two six-month periods in each calendar year, the first running from January 1st through June 30th and the second running from July 1st through December 31st.

r.  "Seal Leg Sight Glass System" means the transparent tube or window installed within a piping system on a vessel or other process equipment that allows an

5

observer to monitor the fluid level of the seal leg and may provide drainage from a piping system and/or the seal leg.

s.   "Section" means a portion of this Consent Decree identified by a roman numeral.

t.   "United States" means the United States of America, acting on behalf of EPA.

## V.   CIVIL PENALTY

10.   Within 30 Days after the Effective Date, Defendant shall pay the sum of $2,850,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

11.   Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the DOJ account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of Texas after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

General Manager/Vice President
Rick Crabtree
Formosa Plastics Corporation, Texas
201 Formosa Drive
Point Comfort, Texas 77978
RickC@ftpc.fpcusa.com
(361) 987-7000

Robert T. Stewart
Kelly Hart
303 Colorado St.

Austin, Texas 78701
Bob.Stewart@KellyHart.com
(512) 495-6426

on behalf of Defendant. Defendant may change the individual to receive payment instructions on

its behalf by providing written notice of such change to DOJ and EPA in accordance with

Section XV (Notices).

12.     At the time of payment, Defendant shall send notice that payment has been made:

(i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati

Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to DOJ via email

or regular mail in accordance with Section XV (Notices); and (iii) to EPA in accordance with

Section XV (Notices). Such notice shall state that the payment is for the civil penalty owed

pursuant to the Consent Decree in *United States v. Formosa Plastics Corporation, Texas* and

shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-08995/1.

13.     Defendant shall not deduct any penalties paid under this Consent Decree pursuant

to this Section or Section IX (Stipulated Penalties) in calculating its federal income tax.

## VI.     COMPLIANCE REQUIREMENTS

14.     Upon the Effective Date and until this Consent Decree is terminated in

accordance with Section XIX (Termination) Defendant shall notify the United States, in

accordance with Section XV (Notices), of any accidental release at the Facility that meets the

criteria set forth in 40 C.F.R. § 68.42(a) within 10 Days of the accidental release.

15.     Within 60 Days after the Effective Date, Defendant shall submit to the United

States, in accordance with Section XV (Notices), a complete list (by process unit at the Facility)

of all Overdue Mechanical Integrity Inspections and Tests required by 40 C.F.R. § 68.73 ("Initial Overdue Mechanical Integrity List").

16.     Within six months after submitting the Initial Overdue Mechanical Integrity List to the United States, as required by Paragraph 15, Defendant must complete all Overdue Mechanical Integrity Inspections and Tests listed on the Initial Overdue Mechanical Integrity List.

17.     In each semi-annual report required by Paragraph 49.a of this Consent Decree, Defendant shall report any Overdue Mechanical Integrity Inspections and Tests (by process unit at the Facility) required by 40 C.F.R. § 68.73 that are overdue at any point during the Reporting Period. Beginning eight months after the Effective Date, Overdue Mechanical Integrity Inspections and Tests that are overdue by 15 Days or more shall be subject to stipulated penalties in accordance with Section IX (Stipulated Penalties).

18.     Within 90 Days after the Effective Date, Defendant shall submit to the United States, in accordance with Section XV (Notices), an updated Emergency Response Plan, as required by 40 C.F.R. § 68.95, that provides documentation of proper first-aid and emergency medical treatment necessary to treat accidental human exposures.

19.     Within 90 Days after the Effective Date, Defendant shall submit to the United States, in accordance with Section XV (Notices), a written procedure for the inspection, maintenance, and replacement of Seal Leg Sight Glass Systems at the Facility's Chlor-Alkali Unit. The submission shall include a complete list of all Seal Leg Sight Glass Systems in use at the Chlor-Alkali Unit.

20.     Within 90 Days after the Effective Date, Defendant shall submit to the United

States, in accordance with Section XV (Notices), an updated Respiratory Protection Program that

requires that all employees and contractors (a) wear a full-face acid-gas respirator for tasks that

involve potential chlorine exposure at or above 1-ppm, and (b) carry an escape respirator

approved for chlorine use while performing tasks in areas where there is a potential for any

exposure to chlorine.

21.     Within 90 Days after the Effective Date, Defendant shall develop key

performance indicators ("KPIs" (i.e., metrics)) to evaluate Defendant's implementation of 40

C.F.R. Part 68. The KPIs shall evaluate the implementation of the following procedures:

a.     Management of change;
b.     Energy isolation;
c.     Lockout/tagout;
d.     Line breaks;
e.     Opening process equipment or piping;
f.     Hot work permits;
g.     General work permits;
h.     Permit issuance; and
i.     Confined space entry.

Defendant shall follow applicable recognized and generally accepted good engineering practices

("RAGAGEP") in developing and evaluating the KPIs. Defendant shall submit the KPIs to the

United States within 120 Days of the Effective Date, in accordance with Section XV (Notices).

22.     After submission of the KPIs to the United States, Defendant shall review the

KPIs at least every 90 Days until the termination of this Consent Decree as a means to evaluate

the effectiveness of the KPIs and Defendant's implementation of 40 C.F.R. Part 68 requirements.

Defendant shall determine if an adjustment to the KPIs is needed, and if so, shall adjust the

existing KPIs or develop new KPIs within 60 Days after each review. Defendant shall include an

assessment of the effectiveness of the KPIs, including any graphical analysis, and shall document

any changes made to the KPIs in the semi-annual report required by Paragraph 49.a of this

Consent Decree.

23.     Defendant shall complete a Metallurgical Evaluation for service compatibility

with hydrochloric acid for all process related equipment in the Hydrochloric Acid Synthesis

Unit. The Metallurgical Evaluation shall be completed by a Metallurgist or Metallurgical

Engineer, qualified by education and experience to conduct such analysis. Such Metallurgical

Evaluation shall consist of the following: (1) review of industry standards and practices,

technical literature, and consensus recommendations for materials in hydrochloric acid service

and materials of construction for hydrochloric acid synthesis units; (2) compilation of a list of

materials both suitable and unsuitable for such service in the Hydrochloric Acid Synthesis Unit;

(3) a positive material identification analysis of materials installed in the Hydrochloric Acid

Synthesis Unit.

24.     Within 120 Days after the Effective Date, Formosa shall submit a Metallurgical

Evaluation Report to the United States in accordance with Section XV (Notices) that includes the

following: (1) a certification of Defendant's completion of the Metallurgical Evaluation; (2)

identification of any deficiencies discovered on the process related equipment during the

Metallurgical Evaluation; and (3) a plan, including a schedule, to correct any deficiencies.

VII.    THIRD PARTY AUDIT

25.     Defendant shall retain, at its expense, one or more independent third party

contractors to conduct a comprehensive audit ("Audit") of Defendant's compliance with 40

C.F.R. §§ 68.69 (operating procedures), 68.73 (mechanical integrity), 68.75 (management of

change), and 68.85 (hot work), at the following covered processes: Chlor-Alkali; High Density Polyethylene Unit No. 1; High Density Polyethylene Unit No. 2; Olefins 1; and Linear Low Density Polyethylene Unit.

26.     Within 30 Days after the Effective Date, Defendant shall submit to the United States the name and qualifications of at least two proposed Audit Contractors. Defendant shall certify that each proposed Auditor Contractor meets the following conditions:

a.     The Audit Contractor and its personnel are trained and/or certified in proper auditing techniques.

b.     The Audit Contractor and its personnel have experience in petrochemical plants, are knowledgeable regarding the Chemical Accident Prevention Regulations at 40 C.F.R. Part 68, have at least 5 years' experience conducting 40 C.F.R. § 68.79 compliance audits, and have the appropriate educational credentials to conduct the Audit referenced in Paragraph 25.

c.     The Audit Contractor and its personnel have not conducted incident investigations, compliance audits, research, development, design, construction, financial, engineering, legal, consulting, or any other advisory services for Defendant in the three years prior to the Effective Date.

d.     The Audit Contractor shall not provide commercial, business, or voluntary services to Defendant, excluding services provided in its capacity as Audit Contractor, for a period of at least one year following the completion of the Audit.

      e.      Defendant shall not provide future employment to any of the Audit Contractor's personnel who conducted or otherwise participated in auditing services under this Consent Decree for a period of at least one year following the completion of the Audit.

27.     In the event that Defendant is not able to certify that the Audit Contractor(s) meet(s) all the conditions in Paragraph 26 and if Defendant is unable, after diligent efforts, to identify any alternative Audit Contractor that would satisfy such conditions, Defendant shall submit to the United States:

      a.      An explanation of its efforts to find an alternative Audit Contractor;

      b.      An explanation of specifically which of the conditions in Paragraph 26 are not being met and the reasons they are not being met; and

      c.      A conflict of interest mitigation plan for how Defendant will ensure that the Audit Contractor will have sufficient independence to objectively and competently perform the Audit referenced in Paragraph 25.

28.     The United States will notify Defendant in writing whether it approves of each proposed Auditor Contractor. If the United States determines that both Audit Contractors selected by Defendant are not acceptable for any reason, it will notify Defendant in writing and Defendant shall, within 30 Days, submit an alternate Audit Contractor that satisfies the criteria set forth in Paragraph 26.

29.     Defendant shall retain any approved Audit Contractor(s), within 45 Days after notification of approval by the United States. Defendant shall ensure that its contract with each Audit Contractor explicitly requires the Audit Contractor to perform the relevant audit activities

12

pursuant to Section VII (Third Party Audit) and maintain the independence requirements required in Paragraphs 26.d and 26.e. Defendant shall use all commercially reasonable efforts to ensure that the Audit Contractor complies with the requirements set forth in this Consent Decree, including deadlines established thereunder and in approved schedules. In the retention contract with the Audit Contractor, Defendant shall use best efforts to include enforceable obligations paralleling applicable Consent Decree requirements and remedies, including penalties for nonperformance or delayed performance by the Audit Contractor.

30.     If, after retention by Defendant, the selected Audit Contractor cannot timely and satisfactorily perform the Audit, then within 60 Days of learning that the Audit Contractor cannot timely and satisfactorily perform the Audit, Defendants shall submit the name and qualifications of at least two proposed replacement Audit Contractors to the United States for approval or retain an Audit Contractor previously approved by the United States. Any replacement Audit Contractor must meet the conditions in Paragraph 26.

31.     The Audit Plan. Within 120 Days after the date of notification that the United States approves of Defendant's Audit Contractor, Defendant shall submit to the United States a proposed Audit Plan ("Plan"), including a schedule of Audit activities and the date of the final report, developed by the Audit Contractor(s). The Plan shall require the evaluation of Defendant's current compliance with 40 C.F.R. §§ 68.69, 68.73, 68.75, and 68.85 at the five process units identified in Paragraph 25. The Plan must include the types and number of process equipment to be included in the Audit.

32.     If the United States approves of the Plan, or does not notify Defendant that it approves or disapproves of the Plan within 45 Days of receiving the Plan, Defendant shall begin

13

implementing the Plan within two Days after notification of approval of the Plan, or the 46th

Day, whichever is sooner. If the United States does not notify Defendant of its approval or

disapproval of the Plan within 45 days of receipt, the Plan shall be deemed approved.

      a.      If the United States disapproves of the Plan, it shall state the deficiencies in the Plan. Defendant shall, within 30 Days, or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Plan for approval. If the resubmission is approved by the United States, Defendant shall begin implementing the Plan within two Days after notification of approval of the Plan.

      b.      If the resubmitted Plan is disapproved, the United States shall again state the deficiencies in the Plan and may again require Defendant to correct any deficiencies, subject to Defendant's right to invoke Dispute Resolution and the right of the United States to seek stipulated penalties as provided in Section IX (Stipulated Penalties).

      c.      If Defendant elects to invoke Dispute Resolution, Defendant shall do so by sending a Notice of Dispute in accordance with Paragraph 78 within 30 Days, or such other time as the Parties agree to in writing, after receipt of the disapproval.

      d.      Any stipulated penalties applicable to the original submission, as provided in Section IX (Stipulated Penalties), accrue during the 30 Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved; provided that, if the original submission was

14

so deficient as to constitute a material breach of Defendant's obligations under this Consent Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

33.     Defendant shall provide the United States advance notice of, and the United States may attend, any third party audit conducted pursuant to this Consent Decree.

34.     Defendant shall ensure that the Audit, Audit Briefing, and Final Audit Report are completed according to the schedule set forth in the Plan and requirements in this Consent Decree.

35.     <u>Audit Briefing</u>. Within five (5) Days of the completion of the Audit, the Audit Contractor(s) shall conduct an out-briefing with Defendant in which the Auditor shall orally convey all known Findings. Defendant may elect to obtain a transcript of the Audit Briefing at its own expense. Defendant shall notify the United States of the scheduled date of the Audit Briefing at least five (5) Days prior to the briefing. The United States shall have the right to have its representatives attend the Audit Briefing either in person, remotely, or telephonically. If the Audit Briefing date changes, Defendant shall notify the United States by email as soon as possible, but at least 24 hours prior to the Audit Briefing time.

36.     Defendant shall correct any information presented during the Audit Briefing that Defendant believes is inaccurate or incorrect by providing the factual or technical basis and supporting evidence demonstrating such belief to the Audit Contractor(s) within 15 Days of the Audit Briefing.

37.     Final Audit Report. The Audit Contractor(s) shall concurrently submit a final audit report to the United States and Defendant for each audit (or a combined report).

38.     Other than during the Audit Briefing, the Audit Contractor(s) shall not share any preliminary Findings or reports in any format with the Parties.

39.     The Final Audit Report shall be completed by the Audit Contractor(s) and include all Findings, non-binding recommendations, conclusions, and monitoring results of the Audit Contractor. Defendant's employees shall not contribute to any portion of the Final Audit Report.

40.     Should Defendant implement corrective actions to address any Findings disclosed at the Audit Briefing prior to the submission of the Final Audit Report, the Audit Contractor(s) shall still include such Finding in the Final Audit Report and Defendant shall report a description of the corrective action taken in Defendant's Response to Final Audit Report.

41.     Defendant shall provide to the United States a list of all documents reviewed by the Audit Contractor and shall identify all Facility personnel interviewed in support of the Final Audit Report. Defendant shall provide copies or electronic links to all documents reviewed by the Audit Contractor upon request from the United States.

42.     The Final Audit Report must include the following certification, signed and dated by the Audit Contractor(s).

> I certify that this Audit Report was prepared in accordance with a system designed to assure qualified personnel, including myself, properly gathered and evaluated the information upon which the Audit is based. I further certify that the Audit was conducted and the Audit Report was prepared pursuant to the requirements of the Consent Decree. Based on my personal knowledge and experience, and inquiry of personnel involved in the Audit, the information submitted herein is true, accurate, and complete.

43.    <u>Response to the Final Audit Report</u>. Within 60 Days of receiving the Final Audit Report, Defendant shall submit to the United States a response to all Findings set forth in the Final Audit Report, with a description of any completed or proposed corrective actions ("Response and Corrective Action Plan"). The Response and Corrective Action Plan shall include a reasonable schedule for completion of all corrective actions based on best engineering judgment. In the event that the appropriate corrective action for any Finding would require a shutdown of the process unit, a reasonable schedule may, with justification, include the time up to and including the next scheduled shutdown or turnaround unless that schedule would otherwise cause Defendant to violate 40 C.F.R. § 68.73(e). The schedule shall not exceed 18 months from the submission of the Final Audit Report, unless otherwise approved by the United States.

44.    Should Defendant identify any Finding in its Response and Corrective Plan that Defendant believes to be inaccurate or incorrect, Defendant shall provide the factual or technical basis and supporting evidence demonstrating such belief to the United States. The United States shall review the technical basis and supporting evidence and may waive any corrective action requirements consistent with its determination that the Finding was incorrect or inaccurate. Defendant may invoke Dispute Resolution pursuant to Section XI (Dispute Resolution) of the Consent Decree with respect to any contested Finding that the United States does not waive pursuant to this Paragraph, if invoked within 30 Days of receiving notice from the United States.

45.    Defendant shall implement and complete all corrective actions in the Response and Corrective Action Plan in accordance with the schedule submitted to the United States, required by Paragraph 43. Any modification to the schedule must be approved by the United

17

States. Defendant may request a modification to the schedule by submitting a written request to the United States, in accordance with Section XV (Notices), describing the reason for the schedule modification and including a proposed modified schedule.

46.     Defendant shall report all completed corrective actions during each Reporting Period to the United States in the semi-annual reports required by Paragraph 49.a. Defendant shall include the date corrective action was completed, a description of the corrective action, and any supporting documentation.

47.     The Final Audit Report, and any information developed or Findings of the Auditor Contractor(s), shall not be subject to any privilege or protection, other than Confidential Business Information if so claimed consistent with Paragraph 90.

48.     The United States may rely solely on the Findings of the Final Audit Report and on the Response and Corrective Action Plan to determine Defendant's compliance with this Consent Decree and 40 C.F.R. Part 68. However, the United States shall not be bound by the Final Audit Report. If the United States determines that Defendant is in violation of any requirement of this Consent Decree, Defendant shall be subjected to stipulated penalties as provided in Section IX (Stipulated Penalties), regardless of the Final Audit Report.

VIII.   REPORTING REQUIREMENTS

49.     Defendant shall submit the following reports to the United States at the addresses set forth in Section XV (Notices):

a.     <u>Semi-annual Reports</u>. By July 31st and January 31st of each year, commencing after the Effective Date of this Consent Decree and continuing until termination of this Consent Decree pursuant to Section XIX (Termination), Defendant

18

shall submit to the United States a semi-annual report for the preceding Reporting Period.
Each semi-annual report shall include the following information for the applicable
Reporting Period from the Effective Date forward:

(1)     A description of Defendant's activities undertaken during the
        Reporting Period to achieve compliance with this Consent Decree,
        corresponding with each of the obligations set forth in Section VI
        (Compliance Requirements) and Section VII (Third Party Audit);

(2)     A listing of all Overdue Mechanical Integrity Inspections and Tests
        that are overdue at any point during the Reporting Period for
        process equipment at each "Covered Process" located at the
        Facility as required by Paragraph 17;

(3)     An assessment of the effectiveness of all KPIs developed pursuant
        to this Consent Decree, including any graphical analysis, and any
        changes to the KPIs as required by Paragraph 22;

(4)     A description of all completed corrective actions taken by
        Defendant during the Reporting Period as required by Paragraph
        46.

(5)     Identification of all plans, reports, and other submissions required
        by this Consent Decree that Defendant completed and submitted
        during the Reporting Period; and

(6)     A description of any additional activities Defendant plans to
        undertake during the next Reporting Period in order to achieve

19

compliance with this Consent Decree.

      b.     <u>Non-compliance Reports</u>. Each semi-annual report shall also include a description of any non-compliance with the requirements of this Consent Decree and an explanation of the violation's likely cause and the remedial steps taken, or to be taken, to prevent or minimize such violation. Nothing in this Paragraph or the following Paragraph relieves Formosa of its obligation to provide the notice required by Section X (Force Majeure).

50.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Consent Decree, or the performance of its Facility including any condition discovered during the Audit, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA by telephone or email as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

51.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

52.     This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

20

53.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

54.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

IX.     STIPULATED PENALTIES

55.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

56.     Late Payment of Civil Penalty. If Defendant fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $7,500 per Day for each Day that the payment is late. This stipulated penalty is in addition to any interest, fees, or other penalties that may be assessed due to the late payment.

57.     Transfer of Ownership. If Defendant fails to: (a) provide a copy of this Consent Decree to any proposed transferee or to provide written notice to the United States at least 30 Days prior to any transfer of any portion of the Facility; or (b) timely provide to the United States an executed copy of the written agreement with the transferee as required by Paragraph 5, Defendant shall pay a stipulated penalty of $10,000 per occurrence.

21

58.     The following violations shall accrue stipulated penalties in accordance with the chart below:

| Penalty per Day per Violation | |
|---|---|
| $1,500 | 1st through 14th Day of violation |
| $2,500 | 15th through 30th Day of violation |
| $4,500 | 31st Day of violation and beyond |

    a.     Each failure to comply with the requirement in Paragraph 14.

    b.     Failure to comply with the requirement in Paragraph 15.

    c.     Failure to comply with the requirement in Paragraph 18.

    d.     Failure to comply with the requirement in Paragraph 19.

    e.     Failure to comply with the requirement in Paragraph 20.

    f.     Each failure to comply with the requirements in Paragraph 21.

    g.     Each failure to comply with the requirements in Paragraph 22.

    h.     Failure to comply with the requirements in Paragraph 26.

59.     The following violations shall accrue stipulated penalties in accordance with the chart below:

| Penalty per Day per Violation | |
|---|---|
| $2,500 | 1st through 14th Day of violation |
| $4,500 | 15th through 30th Day of violation |
| $6,000 | 31st Day of violation and beyond |

22

a.  Each failure to comply with the requirements in Paragraph 16.

b.  Each failure to comply with the requirements in Paragraph 23.

c.  Failure to comply with the requirements in Paragraph 24.

d.  Each failure to comply with the requirements in Paragraph 31.

e.  Each failure to comply with the requirements in Paragraph 43.

f.  Each failure to comply with the requirements in Paragraph 45, provided there shall be no stipulated penalty for any Finding that is timely corrected.

60.  The following violations shall accrue stipulated penalties in accordance with the chart below:

| Penalty per Day per Violation | |
| --- | --- |
| $500 | 1st through 14th Day of violation |
| $800 | 15th through 30th Day of violation |
| $1,000 | 31st Day of violation and beyond |

a.  Failure to comply with the requirement in Paragraph 28.

b.  Each failure to comply with the requirements in Paragraph 29.

c.  Failure to comply with the requirements in Paragraph 30.

d.  Each failure to comply with the requirements in Paragraph 32.

e.  Each failure to comply with the requirements in Paragraph 35.

f.  Each failure to comply with the requirements in Paragraph 41.

61.    <u>Reporting Requirements</u>.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VIII:

| Penalty per Day per Violation | |
|---|---|
| $500 | 1st through 14th Day of violation |
| $1,000 | 15th through 30th Day of violation |
| $1,500 | 31st Day of violation and beyond |

62.    For each Overdue Mechanical Integrity Inspection or Test that is reported in a semi-annual report, as required by Paragraphs 17 and 49.a, Defendant shall pay $5,000 per Mechanical Integrity Inspection or Test overdue by 15 to 30 Days and $10,000 per Mechanical Integrity Inspection or Test overdue by more than 30 Days.

63.    For any violation of this Consent Decree not covered elsewhere in this Section, Defendant shall pay $1,000 per Day, per violation.

64.    Stipulated penalties that accrue per Day under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

65.    Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand, subject to Paragraph 67.

66.    The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

24

67.     Stipulated penalties shall continue to accrue as provided in Paragraph 64, during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement of the Parties or by a decision of the United States that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of the United States' decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

68.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth in Paragraph 11 and with the confirmation notices required by Paragraph 12, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

69.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

25

70.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

71.     <u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Consent Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## X.     FORCE MAJEURE

72.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

26

73.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice by telephone or by email to the United States, as provided in Section XV (Notices), within 72 hours of when Defendant first knew that the event might cause a delay. Within 10 Days thereafter, Defendant shall provide in writing to the United States in accordance with Section XV (Notices) an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

74.     If the United States agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for

performance of any other obligation. The United States will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

75.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, the United States will notify Defendant in writing of its decision.

76.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 20 Days after receipt of the United States' notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 72 and 73. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to the United States and the Court.

## XI.     DISPUTE RESOLUTION

77.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Consent Decree.

78.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends DOJ and EPA a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 45 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

79.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ and EPA a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

80.     The United States shall send Defendant its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

81.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV (Notices), a motion requesting

29

judicial resolution of the dispute. The motion must be filed within 15 Days of receipt of the

United States' Statement of Position pursuant to the preceding Paragraph. The motion shall

contain a written statement of Defendant's position on the matter in dispute, including any

supporting factual data, analysis, opinion, or documentation, and shall set forth the relief

requested and any schedule within which the dispute must be resolved for orderly

implementation of the Consent Decree.

82.     The United States shall respond to Defendant's motion within the time period

allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent

permitted by the Local Rules.

83.     <u>Standard of Review.</u> In a formal dispute resolution proceeding under this Section,

Defendant bears the burden of demonstrating that its position complies with this Consent Decree

and the CAA, and that it is entitled to relief under applicable principles of law. The United States

reserves the right to argue that its position is reviewable only on the administrative record and

must be upheld unless arbitrary and capricious or otherwise not in accordance with law, and

Defendant reserves the right to argue to the contrary.

84.     The invocation of dispute resolution procedures under this Section shall not, by

itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent

Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

payment shall be stayed pending resolution of the dispute as provided in Paragraph 67. If

Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid

as provided in Section IX (Stipulated Penalties).

XII.   INFORMATION COLLECTION AND RETENTION

85.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any facility covered by this Consent Decree, at all reasonable times, subject to any applicable federal law and regulation, upon presentation of credentials, to:

      a.     monitor the progress of activities required under this Consent Decree;

      b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

      c.     obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

      d.     obtain documentary evidence, including photographs and similar data; and

      e.     assess Defendant's compliance with this Consent Decree.

86.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant relevant to compliance with the terms of this Consent Decree. Upon request, EPA shall provide Defendant splits of any samples taken by EPA relevant to compliance with the terms of this Consent Decree.

87.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information retention requirement

31

shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

88.     At the conclusion of the information retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA in electronic form.

89.     Defendant may assert that certain documents, records, or other information required to be provided under this Section is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

90.     Defendant may also assert that information required to be provided under this Consent Decree is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2. Unless the Defendant makes a claim of CBI at the time

it submits the information, the information may be made available to the public by EPA without further notice to the Defendant.

91.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

92.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging of this Consent Decree.

93.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 92. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

94.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim

33

based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 92.

95.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7412(r), *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

96.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

97.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

XIV.   COSTS

98.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees)

34

incurred in any action necessary to collect any portion of the civil penalty or any stipulated

penalties due but not paid by Defendant.

XV.    NOTICES

99.    Unless otherwise specified in this Consent Decree, whenever notifications,

submissions, or communications are required by this Consent Decree, they shall be made in

writing and addressed as follows, with a courtesy copy by email (except that attachments that are

too voluminous to email must be copied onto other electronic media and sent by mail):

| | |
|---|---|
| As to DOJ by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-08995/1 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-2-1-08995/1 |
| As to EPA by mail and email: | Samuel Tates, Chief<br>Chemical Accident Enforcement Section (ECDAC)<br>Air Enforcement Branch<br>Enforcement and Compliance Assurance Division<br>U.S. Environmental Protection Agency<br>Region 6<br>1201 Elm Street, Suite 500<br>Dallas, Texas 75720<br>Tates.Samuel@EPA.gov |

35

As to Defendant by mail and email:   Formosa Plastics Corporation, Texas
Attn: General Manager/Vice President
201 Formosa Drive
Point Comfort, Texas 77978
RickC@ftpc.fpcusa.com

Formosa Plastics Corporation, U.S.A.
Attn: Corporate EHS Assistant Vice President
9 Peach Tree Hill Road
Livingston, New Jersey 07039
JPastuck@fpcusa.com

Robert T. Stewart
Kelly Hart
303 Colorado St., Suite 2000
Austin, Texas 78701
Bob.Stewart@KellyHart.com

100.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

101.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing or transmission by email, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.   EFFECTIVE DATE

102.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII.  RETENTION OF JURISDICTION

103.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering

orders modifying this Consent Decree, pursuant to Sections XI (Dispute Resolution) and XVIII (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVIII. MODIFICATION

104.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court. Non-material changes to the Consent Decree shall include, but are not limited to, schedule changes of six months or less.

105.    Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section XI (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 83, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.   TERMINATION

106.    After Defendant has completed the requirements of Section VI (Compliance Requirements), has complied with all other requirements of this Consent Decree, including those relating to the Third Party Audit required by Section VII, and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation. The Request for Termination must include a report affirming that there are no Overdue Mechanical Integrity Inspections and Tests required by 40 C.F.R. § 68.73 at the Facility. The report must be signed and include the certification statement in Paragraph 51.

37

107.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree. Section XII (Information Collection and Retention) shall survive termination.

108.     If the United States does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section XI. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XX.     PUBLIC PARTICIPATION

109.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

## XXI.     SIGNATORIES/SERVICE

110.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that

he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

111.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Defendant need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXII.   INTEGRATION

112.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contain in this Consent Decree.

## XXIII. 26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION

113.    For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability), Paragraph 6; Section VI (Compliance Requirements), Paragraphs 14 - 24; Section VII (Third Party Audit) Paragraphs 25 - 31, 32 (but only concerning implementation of the approved Plan),

and 33 - 46; Section VIII (Reporting Requirements), Paragraph 49, 51; and Section XII (Information Collection and Retention), Paragraphs 85 - 88 is restitution or required to come into compliance with the law.

## XXIV. FINAL JUDGMENT

114.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.


Dated and entered this __ Day of _____, 2021


_____
UNITED STATES DISTRICT JUDGE

Signature Page for Consent Decree in the matter of *United States of America v. Formosa Plastics Corporation, Texas*

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

09/10/2021
_____
Date

_____
ASIA A. MCNEIL-WOMACK
Trial Attorney, Ga Bar 821002
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC  20044-7611
(202) 305-0544 (telephone)
(202) 616-6584 (facsimile)
Asia.McNeil-Womack@usdoj.gov

JENNIFER B. LOWERY
Acting United States Attorney
Southern District of Texas

ANDREW A. BOBB
Assistant United States Attorney
SBOT No. 02530350
Fed. Bar Id. 9041
1000 Louisiana, Suite #2300
Houston, Texas 77002
Tel.: (713) 567-9766
Andrew.Bobb@usdoj.gov

41

Signature Page for Consent Decree in the matter of *United States of America v. Formosa Plastics Corporation, Texas*

                                        FOR THE U.S. ENVIRONMENTAL PROTECTION
                                        AGENCY:

                                        LAWRENCE        Digitally signed by LAWRENCE
                                                        STARFIELD
                                        STARFIELD       Date: 2021.08.13 17:40:25 -04'00'
Dated: _____
                                        _____
                                        LAWRENCE E. STARFIELD
                                        Acting Assistant Administrator
                                        Office of Enforcement and Compliance Assurance
                                        United States Environmental Protection Agency
                                        1200 Pennsylvania Avenue, N.W.
                                        Washington, D.C. 20460

                                        *Cheryl T. Seager*    Digitally signed by CHERYL SEAGER
                                                              DN: c=US, o=U.S. Government, ou=Environmental Protection
                                                              Agency, cn=CHERYL SEAGER,
                                                              0.9.2342.19200300.100.1.1=68001003651793
Dated: 07/26/2021                                             Date: 2021.07.26 13:08:12 -05'00'
                                        _____
                                        CHERYL T. SEAGER
                                        Director
                                        Enforcement and Compliance Assurance Division
                                        United States Environmental Protection Agency, Region 6
                                        1201 Elm Street, Suite 500
                                        Dallas, Texas 75270

                                                              Digitally signed by JAMES MCGUIRE
                                                              DN: c=US, o=U.S. Government,
                                                              ou=Environmental Protection Agency,
                                        JAMES MCGUIRE         cn=JAMES MCGUIRE,
                                                              0.9.2342.19200300.100.1.1=68001003
                                                              977115
                                                              Date: 2021.07.26 15:17:11 -05'00'
Dated: _____
                                        _____
                                        JAMES MCGUIRE
                                        Regional Counsel
                                        United States Environmental Protection Agency, Region 6
                                        1201 Elm Street, Suite 500
                                        Dallas, Texas 75270

                                                              Digitally signed by CLARISSA MILLS
                                                              DN: c=US, o=U.S. Government,
                                                              ou=Environmental Protection Agency,
                                        CLARISSA              cn=CLARISSA MILLS,
                                                              0.9.2342.19200300.100.1.1=68001003
                                        MILLS                 53451
                                                              Date: 2021.07.26 09:34:04 -05'00'
Dated: _____
                                        _____
                                        CLARISSA HOWLEY MILLS
                                        Assistant Regional Counsel
                                        United States Environmental Protection Agency, Region 6
                                        1201 Elm Street, Suite 500
                                        Dallas, Texas 75270

Signature Page for Consent Decree in the matter of *United States of America v. Formosa Plastics Corporation, Texas*

FOR FORMOSA PLASTICS CORPORATION, TEXAS:

Dated: 07/12/2021

RICK CRABTREE
General Manager/ Vice President
Formosa Plastics Corporation, Texas
201 Formosa Drive
Point Comfort, Texas 77978

43